1999 OK CIV APP 21

Janice KNIGHT, Petitioner,

v.

ALLIED SIGNAL, Travelers Insurance, and the Workers' Compensation Court, Respondents.

No. 91,279

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 10, 1998.

Certiorari Denied Feb. 10, 1999.

Susan Jones, Wilson Jones, Wilson Jones, PC, Tulsa, Oklahoma, For Petitioner,

Pat A. Padgett, Whitten, Layman, Mackenzie, Padgett and Whitten, Tulsa, Oklahoma, For Respondents.

OPINION

ADAMS, Judge:

¶ 1 The workers' compensation trial court entered an order finding that Claimant Janice Knight was employed by Allied Signal (Employer) on May 16, 1991, when she sustained an accidental personal injury due to cumulative trauma to "the HERNIAS (right and left)" arising out of and in the course of her employment. The trial court further found that "reasonable and necessary medical treatment" by Dr. M. and Dr. G was to include surgery. That order was unanimously affirmed by a three-judge panel.

¶ 2 After Dr. G performed another surgery on Claimant during which he installed "Mar-

lex mesh" to correct her hernias, Claimant filed a Form 9, seeking permanent total disability (PTD), or in the alternative, permanent partial disability (PPD), medical maintenance, vocational retraining and temporary total disability (TTD) from March 16, 1991 to June 1, 1994. Employer specifically denied entitlement to TTD benefits for that period. Subsequent to both parties' numerous objections to the medical reports, the trial court ordered an independent medical examination by Dr. T. Thereafter, the case proceeded to trial.

¶ 3 The trial court entered an order awarding Claimant 14 weeks of TTD benefits and 14% PPD due to hernia (over a prior 1% disability), denying continuing medical treatment, and reserving the issue of vocational retraining. Apparently agreeing with Employer's statutory interpretation, the trial court specifically found that the "Marlex mesh" used to repair Claimant's hernias was not a "artificial reinforcement or device as contemplated by 85 O.S. § 22."

¶ 4 In her first proposition of error, Claimant argues that the trial court incorrectly interpreted the hernia paragraph within 85 O.S.1991 § 22(3), which provides:

Hernia: In case of an injury resulting in hernia, temporary total compensation for fourteen (14) weeks, and the cost of an operation shall be payable; provided, in any case where the injured employee has been twice previously operated for hernia in the same area and it is established by opinion of a competent surgeon that further surgery in the same area will not result in full relief of the condition, the Court may then award compensation for disability resulting therefrom under paragraph 1 of this section, or, if not totally and permanently disabled, then under the "Other Cases" subdivision following, and, after a second surgical attempt to repair hernia, the injured may not be required to submit to further surgery in an effort to relieve the disability thereafter existing; *provided, further, the use of any artificial reinforcement or device, with or without surgery, shall not be the basis of reducing extent of disability to be awarded.* (Emphasis added).

Contrary to Dr. T's opinion that "Marlex mesh" is not an artificial device because the phrase "artificial reinforcement or device" means an *external* device such as a hernia belt or other constrictive device used to keep a hernia reduced, Claimant argues that the emphasized phrase within § 22(3) does not limit the term "artificial" to that interpretation. Considering the basic definition of "artificial" is "man-made; not natural," Claimant claims that Dr. T's admissions that the Marlex mesh is "synthetic" and "not natural" is undisputable proof that the Marlex mesh is within the definition of "artificial." Therefore, she claims the trial court's finding that the Marlex mesh is not an artificial reinforcement or device is clearly wrong.

¶ 5 Employer contends that Claimant's interpretation extends the definition of an artificial device beyond that which the Legislature contemplated in § 22(3), arguing that "[M]arlex mesh is a medical instrument used to surgically repair an operable hernia. Its use and acceptance as a surgical tool takes it out of the definition of artificial reinforcement or device contemplated by statute." Employer further contends that Dr. T's statements concerning the external devices lends "scientific support" to the trial court's finding that Marlex mesh is not an artificial reinforcement or device within the meaning of § 22(3).

¶ 6 The statutory language at issue has not been addressed by our courts. Statutory interpretation is a question of law. *Oklahoma Employment Security Commission v. Oklahoma Merit Protection Commission,* 1995 OK CIV APP 76, 900 P.2d 470. The primary goal of statutory construction is to ascertain legislative intent; such intent is ascertained from the whole act in light of the general purpose and objective. *City of Bethany v. Public Employees Relations Board of the State of Oklahoma,* 1995 OK 99, 904 P.2d 604. If the language is plain and clearly expresses legislative will, such language will be followed without further inquiry. *State ex rel. Department of Public Safety v.1985 GMC Pickup,* 1995 OK 75, 898 P.2d 1280. In the absence of a contrary definition of the common words used in a legislative act, we must assume that the Legislature intended for them to have the same meaning

as that attributed to them in ordinary and usual parlance. In determining the meaning of an unambiguous statute, the ordinary rules of grammar must be applied unless they lead to an absurd result. *Gilbert Central Corporation v. State*, 1986 OK 6, 716 P.2d 654.

¶ 7 We first note that neither party argues the statute at issue is ambiguous, and in fact, Claimant's argument implies it is clear and unambiguous. We agree. Nor does the Workers' Compensation Act specifically define the phrase "artificial reinforcement or device." Accordingly, in determining the Legislature's intent, we will give the words their ordinary, commonly understood meaning.

¶ 8 According to *Webster's Third New International Dictionary* (1986 Edition), "artificial," means "produced or effected by man's skill to imitate nature" or "synthetic." Moreover, the Legislature chose to precede "artificial" by the adjective "any." By any dictionary, the word "any," *as used* in § 22(3) to modify "artificial," means "every." Applying these definitions to § 22(3), we conclude that the Legislative clearly intended to eliminate the use of *every man-made* reinforcement or device as a basis of reducing the extent of disability for a hernia award. Employer's interpretation ignores the Legislature's use of the all-inclusive word "any" immediately preceding "artificial reinforcement or device" and adds the word "external" before the word "artificial." We are not free to rewrite this provision. Dr. T confirmed in his deposition that the Marlex mesh he installed in Claimant's abdomen is "synthetic" and "not natural," which clearly meets the definition of "artificial." The trial court's conclusion that the mesh is not an artificial reinforcement or device within the meaning of § 22(3) was incorrect.

¶ 9 It is also apparent that the trial court then used the effect of this artificial device in determining Claimant's impairment, because Dr. T testified that *if he considered the Marlex mesh as an artificial device and rated Claimant's impairment without considering the effect of this device, then Claimant would have been in a Class 3 level of impairment according to the AMA Guides.* According to the Guides, the minimum level of disability in Class 3 is 20%, and the maximum is 30%.

The trial court found 14%. The trial court's determination of Claimant's permanent partial disability must be vacated, and the case must be remanded for the trial court to determine, on the evidence already admitted, the amount of Claimant's permanent partial disability without considering the effect of the Marlex mesh.

¶ 10 In her final proposition, Claimant argues the trial court failed to make a specific finding of fact as to the period of time Claimant was temporarily and totally disabled. She claims the evidence established she was temporarily and totally disabled for the entire period between March 16, 1991, through June 1,1994. Even if we determined that to be so, the trial court did not err. An award under the hernia paragraph of § 22(3) is in the nature of an award of a specific injury and is made without regard to the *actual* length of the temporary total disability. *Speer v. Petrolite Specialty Polymers Group*, 1996 OK CIV APP 55, 918 P.2d 92.

¶ 11 In a footnote to her brief, Claimant suggests that if the trial court awarded the 14 weeks based on the statutory benefit, she should have received 14 weeks of compensation for each hernia surgery, except the last, or as she claims a total of six. However, she did not make this argument to the trial court, and there was no evidence presented to support separate and distinct work-related accidents which is required in order to avoid § 22(3)'s 14–week limit. *See Speer.*

¶ 12 The trial court's order determining the amount of Claimant's PPD is vacated, and the case is remanded for the trial court to determine, based upon the evidence already admitted, the amount of Claimant's PPD without considering the effect of the Marlex mesh. In all other respects the trial court's order is sustained.

SUSTAINED IN PART, VACATED IN PART AND REMANDED WITH INSTRUCTIONS

HANSEN, J., and BUETTNER, P.J., concur.